# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 10-719 |
| RICHARD SOMMERS | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Richard Sommers, was in the "Last Chance" program of The Boeing Company for drug-related work infractions at the time of the offenses of conviction. As explained in the Government's Motion for an Upward Variance and in the extensive testimony of the Director of Human Resources for Boeing's Ridley Park, PA plant, the "Last Chance" program provides an opportunity for a Boeing employee who has tested positive for illegal drugs to get inpatient and/or outpatient substance abuse treatment as part of an opportunity for him to retain his employment with the company. In fact, in 2008, he was referred by Boeing to inpatient treatment as part of an earlier opportunity to retain his job. Despite the repeated chances Boeing afforded him, the defendant proceeded to illegally sell buprenorphine, in the form of Suboxone®, to another Boeing employee on three separate occasions. He also arranged for that employee to purchase additional Suboxone® tablets from the defendant's source of supply, and offered to help that employee obtain Oxycontin 80mg tablets. The defendant committed these crimes while helping to build portions of the V-22 Osprey, a military helicopter in active use by men and women of the United States military in operations worldwide. Moreover, while on pretrial release, the defendant twice tested positive for opiates (one time also for morphine). For these reasons and for the reasons stated below, the government requests that the defendant be sentenced to a sentence at the top of his guideline range of zero to six months

imprisonment, to be followed by three years of supervised release and 200 hours of community service at a program that assists military veterans and/or their families.

## I. BACKGROUND

On November 28, 2012, the defendant pled guilty to Counts One through Three of the indictment, charging him with distribution of buprenorphine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(E). The charges stem from his illegal sales on May 25th, May 28th, and June 22nd, 2010, of buprenorphine (in the form os Suboxone® 8mg tablets), a Schedule III controlled substance, to a fellow Boeing employee. Two of the three illegal sales by the defendant were made inside of a building on The Boeing Company's Ridley Park campus.

## II. SENTENCING CALCULATION

### a. Statutory Maximum Sentence

According to the Probation Office, the Court may impose the following sentence on each count of conviction: Ten years imprisonments, three years up to a lifetime of supervised release, a $500,000 fine, and a $100 special assessment.

### B. Sentencing Guidelines Calculation

The government respectfully requests that the Probation Office's calculation of the defendant's advisory guideline range be modified as follows:[1]

> The defendant should be held responsible for the 53 Suboxone 8mg tablets that he personally distributed, and for aiding and abetting the distribution of an additional 20 Suboxone 8mg tablets (the defendant connected the government cooperator

---

[1] Prior to the defendant's guilty plea, government counsel informed counsel for the defendant that the government attributed certain relevant conduct to the defendant, and that his sentencing guidelines should be calculated based upon the inclusion of that relevant conduct. The government mistakenly neglected to provide the supporting documentation to the Probation Office, and did not notice until preparing this memorandum that it was not included in the Presentence Investigation Report (PSR). The relevant conduct does not change the defendant's sentencing guideline range, but because the government respectfully requests that the Court consider it in determining the appropriate sentence for the defendant, the government requests that the PSR be amended to include the conduct.

with his source of supply so that the cooperator could buy directly from that source – thereafter, the cooperator purchased 20 Suboxone 8mg tablets. This transaction was foreseeable to the defendant as a result of his directing the cooperator to his source for precisely the purpose of the cooperator purchasing Suboxone from the source). 73 tablets of Suboxone are treated as 73 grams of marijuana under U.S.S.G. § 2D1.1, Commentary, subsection (D) Drug Equivalency Tables.

Base offense level based for offenses involving the equivalent of less than 250 grams of marijuana under U.S.S.G. § 2D1.1: **6**

Adjustment for acceptance of responsibility, under U.S.S.G. § 3E1.1(a)[2]   **- 2**

---

**TOTAL OFFENSE LEVEL**                                                                 **4**

The defendant has a Criminal History Category of **I** because he has no prior convictions. Accordingly, with a total offense level of 4 and a criminal history category of I, his guidelines range is **zero to six months imprisonment**.

### III. GOVERNMENT'S REQUEST FOR AN UPWARD VARIANCE

The government also requests that the Court grant the government's motion, filed contemporaneously with this motion, for a two-level upward variance to the sentencing guideline range pursuant to U.S.S.G. § 3553(a), based on the fact that the defendant's conduct endangered the lives of our men and women who serve in the United States military. If the Court grants the government's motion, the defendant's final offense level would be **6**. With a total offense level of 6 and a criminal history category of I, the defendant's guideline range remains **zero to six months imprisonment**.

---

[2]   The defendant pled "open" to the charges against him and therefore the parties did not have any agreement as to whether the defendant was entitled to a two-level reduction to his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The Probation Office recommends that the Court grant the two-level reduction, and the government has no objection to the application of this reduction.

In the defendant's sentencing memorandum, the defendant opposes the government's upward variance motion on several grounds, each of which will be addressed briefly in turn. First, as the defendant acknowledges, the government's motion is based on several Title 18, United States Code, Section 3553(a) factors, including but not limited to the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and the need to afford adequate deterrence to criminal conduct. The defendant also points out that general deterrence, which is part of the need to afford adequate deterrence factor, is a valid consideration in determining the appropriate sentence. Thereafter, however, the defendant argues that the government made some error in citing cases in support of the fact that general deterrence should be considered because the cases cited by the government were not based on the same factual pattern as that in the instant case. The government intended nothing more from the citation to certain general deterrence cases than to show that general deterrence is a consideration – that fact has been determined in other contexts and is apparently undisputed by the defendant here. When it is considered in this case, it supports the government's argument that an upward variance motion is appropriate – there are hundreds of employees still working on the manufacture of the Chinook and Osprey helicopters at Boeing's Ridley Park, PA campus, and still thousands, if not tens of thousands, of individuals working on the manufacture of sensitive military equipment throughout the United States. It is entirely appropriate for the Court to consider the need to deter other people from committing crimes like the one committed by this defendant when sentencing the defendant.

Next the defendant argues that an upward variance is not appropriate in his case because the drug he illegally distributed – buprenorphine – is less toxic than drugs such as Oxycontin, which were distributed by some of the other Boeing defendants. This argument misses the government's point: this defendant, along with 21 other felony Boeing defendants (one of whom is now deceased),[3] and 14 misdemeanor Boeing defendants, created an open air illegal drug market at the Boeing plant at which employees, all of whom were described by the Director of Operations as having jobs "critical" to production and "to the safety of . . . war fighters and the platforms that [Boeing] builds for them," built sensitive military equipment. The defendant does not deny that buprenorphine is toxic, or rather, addictive and dangerous in and of itself. Moreover, as the stipulated testimony shows, users of what the defendant calls more "toxic" drugs used the drug sold by this defendant – buprenorphine – to enable them to continue in their addictions. In fact, as the defendant concedes, the defendant told the government cooperator in this case that he would consider introducing the cooperator to an illegal source of Oxycontin at the Boeing plant. In other words, the defendant tries to find fault in the government's arguments for an upward variance by minimizing his own conduct, his own role at the Boeing plant, and his own direct culpability in putting the lives of the men and women of the military at risk.

The defendant's third argument is that an upward variance is not the appropriate way for the government to respond to the failure of the Sentencing Guidelines to include a provision for an upward adjustment for distribution of a controlled substance in a facility manufacturing military equipment. In fact, the Third Circuit has found that intangible harms that are not taken into consideration by the Sentencing Guidelines may be a matter worthy of an upward variance. See, e.g., United States v. McCoy, 272 Fed. Appx. 212, 215 (3d Cir. 2008)

---

[3] Two of the 37 defendants charged in the related cases were not employees at Boeing.

(not precedential) (where defendant stole identities from individuals who donated blood to the Red Cross, affirming upward departure because of non-monetary harm to reputation of Red Cross). Moreover, the defendant again asks the Court to ignore the stipulated testimony that the defendant participated in a drug selling culture at Boeing estimated to involve the illegal use of prescription medications by one out of every four employees at the plant. Again, it is the defendant's specific criminal conduct in the specifically sensitive environment of the Boeing plant that the government requests be redressed by the upward variance.

Finally, the defendant's attempts to minimize the dangers to the U.S. military from his own conduct by arguing that Boeing had a redundancy program to detect manufacturing errors, that the charged sales involved a government cooperator and therefore would never be used by another Boeing employee, that his conduct was less criminal than that of other Boeing defendants, or that risk to the military was lessened because the U.S. Attorney's Office took affirmative steps to coordinate with Boeing to ensure the quality and safety of the airplanes being constructed during the investigation, is at best disappointing. In reality, it could be construed as a lack of acceptance of responsibility for the serious crimes this defendant committed while building sensitive military aircraft. For these reasons and for the reasons stated in the government's motion, the government respectfully requests that the Court grant a two-level upward variance to the defendant's offense level.

**IV.    DISCUSSION OF THE SENTENCING FACTORS**

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for

the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[4]

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) indicates that the most appropriate sentence is at the top of the sentencing guideline range, to be followed by three years of supervised release and 200 hours of community service at a program that assists military veterans and/or their families.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 2007 WL 4292116 (U.S. Dec. 10, 2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

---

[4] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the 'not greater than necessary' language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

Consideration of the 3553(a) Factors

Restitution is not an issue in this case. A review of the remaining 3553(a) factors illustrates the propriety of a sentence at the top of the advisory guideline sentence.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant

The government explained at length in its contemporaneous motion for an upward variance both the profoundly dangerous nature and role of the controlled substance that the defendant used and sold at Boeing – buprenorphine – and the potential devastating impact of its use or of its perpetuation of the use of oxycodone by others during the manufacture of the V-22 Osprey and Chinook (the government respectfully requests that those arguments be incorporated herein). For the reasons contained in that motion as well as in the stipulated testimony attached thereto, the government avers that the defendant and those illegally using and selling prescription medications and other drugs while at work on the Boeing Company's Ridley Park, PA campus endangered the lives of our men and women who serve in the United States military.

The defendant committed the offenses of conviction after being allowed to maintain his employment at Boeing for nearly two years after it was discovered that he was illegally using drugs at the plant as part of a generous employee benefits program in which he was repeatedly offered drug treatment, both inpatient and outpatient. The Boeing Company's medical coverage includes drug treatment and counseling, and the company's Employee Assistance program offers employees confidential access to drug counselors and inpatient and outpatient drug treatment. As government witnesses explained in the stipulated testimony, anyone working at Boeing could get drug treatment offered by the medical plan at no cost to the employee, without a manager even being notified that the employee had a drug problem, and while receiving disability benefits in lieu of salary. Further, if an employee was in the process of

being disciplined for work-related infractions and that employee notified Boeing management that the genesis of their problems was drug addiction – which is what appears to have happened to this defendant – Boeing would offer them treatment that, if successful, would allow them to retain their employment.  Nonetheless, the defendant decided to participate in the creation of an open air drug market at Boeing in the midst of the manufacturing of military aircraft actively used in combat, rescue and other operations around the world.  He did so after maintaining employment with the Boeing Company for over 20 years.  During this time, he was a skilled worker who was likely earning a significant salary (the defendant apparently did not specifically report his salary to the Probation Office).

For these reasons and the reasons stated below, the government respectfully requests that the Court sentence the defendant to a sentence at the top of the guideline range, to be followed by three years of supervised release and 200 hours of community service at a program that assists military veterans and/or their families.

      **B.**      **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The sentence imposed in this case must fairly punish the defendant for his criminal conduct, and reflect the seriousness of the offense.  Because the defendant chose to sell and use while at work and to assist others in perpetuating their use of serious and potentially deadly drugs, the government respectfully submits that the Court's sentence must reflect the seriousness of the defendant's offenses, promote respect for the law by those with whom he worked and those outside of Boeing, and provide a just punishment for his offenses.

C. **The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**

Prescription drug abuse is a "significant threat" in the United States.[5] The investigation here took a large amount of government resources and, because of the nature of the plant under investigation and the closed culture of its employees, took many years. Accordingly, a guideline sentence is necessary to afford both specific and general deterrence to criminal conduct. The government requests that the Court use its discretion to sentence the defendant to the recommended sentence.

D. **The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

In this case, in light of the defendant's need for substance abuse treatment, the government requests that the Court to adjust the defendant's sentence "to provide the defendant with needed medical care, or other correctional treatment in the most effective manner . . ." Section 3553(a)(2)(D).

E. **The Guidelines and Policy Statements Issued by the Sentencing Commission**

As stated earlier, the Guidelines retain their significant importance in advising judges about appropriate sentences. Uniformity in sentencing should be a paramount goal; in order to rid the criminal justice system of unpredictability and possible bias, like offenders should receive like sentences, to the extent possible. The only vehicle for achieving such a goal is through the application of the Sentencing Guidelines. Here, the defendant abused his position as a worker at the Boeing plant and put the lives of the men and women serving the United

---

[5] National Drug Intelligence Center, National Drug Threat Assessment 2005, U.S. Department of Justice, Document ID: 2005-Q0317-003, February 2005 at 99.

States and other militaries around the world at risk. For his conduct, he should receive a sentence at the top of the sentencing guideline range.

      **F.      The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

A guidelines sentence is necessary when considering the importance of avoiding unwarranted sentencing disparities, another factor that is set forth in Section 3553(a). As an initial matter, this Section 3553(a) factor is not primarily concerned with sentencing disparities in a particular case; it is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. See United States v. Parker, 462 F.3d 273 (3d Cir. 2006); United States v. Carson, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between co-defendants.'"). Here, in determining the appropriate sentence for this defendant, the government respectfully avers that there is nothing in this record to counsel in favor of anything but a sentence at the top of the sentencing guideline range.

**IV.    CONCLUSION**

As explained in detail *infra*, and in the government's variance motion, which has been filed separately, the 3553(a) factors support the imposition of a sentence at the top of the defendant's sentencing guideline range of zero to six months imprisonment, to be followed by three years of supervised release. The government also requests that the defendant be

specifically ordered to receive substance abuse treatment and to perform 200 hours of community service at a program that assists military veterans and/or their families.

                                                Respectfully submitted,
                                                ZANE DAVID MEMEGER
                                                United States Attorney

                                                _____/s/_____
                                                FAITHE MOORE TAYLOR
                                                ASHLEY K. LUNKENHEIMER
                                                Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

        I certify that a copy of the GOVERNMENT'S SENTENCING MEMORANDUM has been filed electronically on the Electronic Case Filing d system and is available for viewing and downloading from the ECF system, and/or was served by electronic mail on the following defense counsel:

        Sara Webster, Esq.
        Walter S. Batty, Jr., Esq.
        *Counsel for Richard Sommers*

        _____/s/_____
        Ashley K. Lunkenheimer
        Assistant U.S. Attorney

Date: July 30, 2013